UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-21756-CIV-MORENO

GUERSON CRUZ and all others similarly
situated under 29 U.S.C. 216(B),

    Plaintiff,

vs.

SOUTHERN WASTE SYSTEMS, L.L.C., et al.,

    Defendants.

_____/



CLOSED CIVIL CASE

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Guerson Cruz seeks to recover overtime benefits under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, against Defendants Southern Waste Systems, L.L.C. ("SWS") and Southern Waste Systems Holdings, L.P. Defendants claim that Plaintiff is exempt from the FLSA under the Motor Carrier Act ("MCA"), 29 U.S.C. § 213(b)(1). The only prong disputed by the parties over the MCA's application is whether Plaintiff transported property through interstate commerce. Upon review of the record, the Court finds sufficient evidence that there was a practical continuity of movement between the intrastate segment Plaintiff participated in and the overall interstate flow of commerce. Accordingly, the Court finds that the motor carrier exemption applies to Plaintiff and GRANTS summary judgment in favor of Defendants.

### INTRODUCTION

Plaintiff worked for Defendants from December 5, 2005 until June, 20, 2009 as a roll-off driver transporting materials in heavy containers. Plaintiff was employed to transport

recyclable materials, such as cardboard boxes, wood, metal, concrete, and trash to third-party vendors, using a vehicle with a gross vehicle weight in excess of 10,001 pounds. (Defs.' Stmt. Mat. Fact. ¶ 4) SWS maintains a United States Department of Transportation ("DOT") permit and Plaintiff does not dispute DOT's regulation over SWS. (Pl.'s Stmt. Mat. Fact. ¶ 4).

On June 25, 2009, Plaintiff filed suit alleging that Defendants did not pay him overtime. Defendants filed the instant summary judgment motion claiming exemption from compliance with the FLSA overtime provisions under the MCA. Defendant SWS also claimed that Defendant Southern Waste Systems Holdings, L.P. is not a properly named Defendant because the company is not an employer and, to be held liable under the FLSA, a company must be an employer. 29 U.S.C. § 216(b). In support of Plaintiff's FLSA claim, Plaintiff did not allege that he performed different work for each Defendant. Instead, he claimed that the work that he did was on behalf of both Defendants. Because the Court finds the work done by Plaintiff exempts him from the FLSA, the Court need not determine whether both Defendants employed Plaintiff.

## LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Then the burden shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of the case on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing the motion must present more than a scintilla of evidence in support of its position and it "may not rest upon the

mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party moved against respond with affidavits, depositions, or otherwise to reflect that there are material facts which must be presented to a jury for resolution. *See Adickes*, 398 U.S. at 159-61. When the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MOTOR CARRIER EXEMPTION

Plaintiff claims he worked more than forty hours per week during his employment and is, therefore, entitled to overtime compensation under the FLSA, 29 U.S.C. § 207. Pursuant to the FLSA, employers must compensate employees for time worked in excess of forty hours per week and at a rate not less than one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). If an employer fails to pay overtime, where required by law, an employee may sue an employer for unpaid overtime wages. 29 U.S.C. § 216(b).

Defendants claim Plaintiff is exempt under the motor carrier exemption, 29 U.S.C. § 213(b)(1), and is, therefore, not entitled to overtime compensation. The employer bears the burden of proving the exemption, *Klinedinst v. Swift Inv., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001), and exemptions from overtime provisions are to be construed narrowly against the employer. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995); *see also Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992).

The MCA clearly states that the FLSA provisions that require overtime payment will not apply to "any employee whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title

49." 29 U.S.C. § 213(b)(1). Indeed, Title 49 U.S.C. § 31502(b)(1)(2) provides, "[t]he Secretary of Transportation may prescribe requirements for (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."

Accordingly, the motor carrier exemption application "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). Therefore the exemption applies if the Secretary of Transportation has the power to establish maximum hours and qualifications of service of employees. That power is triggered if two requirements are met: (1) an employee must be "employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary's] jurisdiction" of the Motor Carrier Act; and (2) an employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a).

Thus, to determine whether to grant summary judgment for the employer under the motor carrier exemption, the Court must determine: (1) whether the employer is a motor carrier subject to the Secretary of Transportation's jurisdiction and (2) whether the Plaintiff was engaged in activity directly affecting the safety of operation of motor vehicles in the transportation on public highways in interstate commerce.

*(1) Defendant SWS is a motor carrier subject to the Secretary of Transportation's jurisdiction*

The parties do not dispute the first prong of the motor carrier exemption. A motor carrier

is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The term "transportation" includes a "motor vehicle . . . related to the movement of . . . property . . . including arranging for, receipt, [and] delivery . . . ." *Id.* at § 13102(23)(A)-(B). Here, SWS's business transports materials from retail centers to vendors with a motor vehicle for compensation qualifying it as a motor carrier. Also, SWS maintains a DOT permit and a commercial driver's license. These kinds of authorizations indicate that the DOT has exercised jurisdiction over it. *See Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) (citing *Baez v. Wells Fargo Armored Servs. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (holding that the Secretary's jurisdiction had been exercised because the company had already been issued a permit)). Thus, SWS has met the first prong of the exemption.

*(2)Whether Plaintiff engaged in activities directly affecting the safety of operation of motor vehicles in interstate commerce:*

At issue is whether Plaintiff transported property through interstate commerce. The parties agree that Plaintiff's job activities took place wholly within the state of Florida. However, the motor carrier exemption can still apply because even "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Walters*, 575 F.3d at 1229 (citations omitted). Nonetheless, a "critical factor in determining the shipment's essential character is the shipper's 'fixed and persisting intent' at the time of the shipment." *Mena v. McArthur Dairy, LLC,* 2009 U.S. App. LEXIS 21142, at *7 (11th Cir. Sept. 22, 2009)(citing 29 C.F.R. § 782.7(b)(2)).

The Interstate Commerce Commission has specifically held that there is no fixed and

persisting transportation intent where:

> (i) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2). The Eleventh Circuit has not required that all three of these factors be met to conclude that a fixed and persisting intent is absent. *Mena,* at *8 n.2. Instead, it is in favor of a "general consideration that draws a fixed and persisting intent 'from all of the facts and circumstances surrounding the transportation.'" *Id.* (citations omitted). Still, the Interstate Commerce Commission's test is instructive in determining whether there was a practical continuity of movement through interstate commerce.

Therefore, because Plaintiff's travel was exclusively within Florida, the Court must determine whether there was a continuous stream of interstate travel such that there is a practical continuity of movement between the intrastate segment that Plaintiff participated in and the overall interstate flow. In other words, to determine whether Plaintiff transported property in interstate commerce, the Court must review the flow of materials after Plaintiff delivered them to third-party vendors.

## ANALYSIS

A threshold issue for the Court is whether there is evidence linking deliveries made by Plaintiff to vendors who transport goods across state lines. The general manager at SWS, Anthony Badala, stated that he reviewed a sampling of Plaintiff's haul sheets, and Plaintiff regularly delivered products to Southeastern Recycling, FPT Metals, Sunrise Recycling and Federal Metals in Miami. (Decl. ¶10). Plaintiff claims though, that Defendants lack any

evidence, such as an invoice, to prove that Plaintiff himself delivered materials to vendors to fill a particular order. (Pl.'s Stmt. Mat. Fact. ¶ 10). Nonetheless, Plaintiff has not provided any competing evidence to refute Defendants' evidence; Defendants have, thus, sufficiently connected Plaintiff's deliveries to the vendors listed below.

To determine whether there was a practical continuity of movement such that the goods delivered by Plaintiff continued through interstate commerce, the Court will review the record evidence provided by the vendors.[1]

The first vendor, George Cinnante of Southeastern Recycling, testified that it receives cardboard products from SWS. (Cinnante Dep. 5: 12-17). After the cardboard is delivered to Southeastern Recycling, the cardboard is "compacted" and baled, meaning straps are added around the cardboard. It is then shipped to various places outside the state of Florida, such as Virginia, Georgia, Alabama, and China. (Cinnante Dep. 5:15-6: 4). The cardboard is never shipped to a destination within Florida. (Cinnante Dep. 10: 20-23). The cardboard remains at Southeastern Recycling for two to three days for it to get baled and then shipped. (Cinnante Dep. 13: 3-9). Mr. Cinnante also explained that all of the cardboard purchased from SWS is based on already existing orders from his customers.

Mr. Cinnante's testimony indicates that the goods delivered to Southeastern Recycling traveled through interstate commerce. The cardboard transported by Plaintiff to Southeastern Recycling was destined, at the time the material was delivered, to a location outside of Florida.

---

[1] Even though there is evidence linking Plaintiff to the vendor Federal Metals, there is no evidence as to what Federal Metals does with the material after Plaintiff delivers it, and, therefore, will not be considered by the Court.

Plaintiff claims, though, that the cardboard changed in form when it was baled by Southeastern Recycling and, therefore, the stream of commerce was interrupted. The Court disagrees and finds that the cardboard was not materially changed. Even though the cardboard is compacted and straps are added to it for easier transport, that process of prepping the material for transportation is not sufficient to deem the cardboard materially altered. The cardboard was not made into a "new commodity, one that had been materially changed in 'character, utility, and value'" before it traveled outside of Florida. *Mena*, at *10 (quoting *Roberts v. Levine*, 921 F.2d 804, 816 (8th Cir. 1990)(citations omitted)).

The second vendor deposed was Rick Morris, the buyer for FPT Florida LLC. He explained that his company purchases metal from SWS, and then shreds it by chopping up the metal into small pieces. Most of the metal is then sent to locations outside the state of Florida, such as Alabama, Georgia, and the Carolinas. The metal stays at Morris's facility from 24 hours up to a week, but never longer than a week. (Morris Dep. 9:2-10). Mr. Morris also explained that the metal purchased from SWS is not predestined to go to a particular customer. As a result, when the metal is delivered by SWS it goes into the inventory for FPT Florida LLC.

The practice of shredding the metal upon arrival indicates that the metal delivered to FPT Florida LLC did not travel through interstate commerce. The flow of commerce is interrupted when FPT Florida LLC shreds the metal into small pieces and transforms it into a new commodity before traveling outside of Florida. Therefore, the goods delivered by Plaintiff to FPT Florida, LLC did not continue through the continuous flow of interstate commerce.

The third vendor, James Martino, the owner and general manager of Sunrise Recycling, explained that his company purchases metal from SWS and does not change it in anyway. The

metal is neither cleaned nor repackaged; it simply remains in the same format as when SWS delivered it. (Martino Dep. 6:4-16). Once the metal is placed in containers, it is delivered to different ports, such as Port Everglades, Port of Miami, Savannah, and Tampa. These ports do not deliver the metal to a destination within Florida, but instead deliver the metal to places like Thailand, Taiwan, Taiwan, and Vietnam. (Martino Dep. 8:9-18). It is typical for the metal to remain in Mr. Martino's metal yard for 30 to 60 days. Even though Mr. Martino contradicts himself in his deposition, the Court analyzes the flow of interstate commerce in the light most favorable to Plaintiff and recognizes that Mr. Martino filled his orders after Plaintiff delivered the metal, and not before the goods were delivered.

Nonetheless, Plaintiff caused goods to travel across state lines by delivering metals to Sunrise Recycling because the metal was unchanged from the time it was delivered to when it was later shipped out of Florida. Note however, that even if the metal remains with Sunrise Recycling for thirty to sixty days, it is merely waiting until the vendor has enough metal to fill the order for exportation. (Martino Dep. 16:13-19). Under these conditions, Sunrise Recycling is "nothing more than a temporary storage hub used to facilitate the orderly distribution of products through interstate commerce." *Mena*, at *11.

## CONCLUSION

The undisputed evidence demonstrates that the goods delivered by Plaintiff to Southeastern Recycling and Sunrise Recycling traveled through the continuous stream of commerce across state lines. Yet the goods delivered to FPT Florida, LLC did not because the metal was altered into a new commodity. Nonetheless, when considering all the facts and circumstances surrounding Plaintiff's delivery of materials to Sunrise Recycling and to

Southeastern Recycling, the Court finds that Plaintiff's delivered materials were destined to travel through interstate commerce. Consequently, the Court finds that Plaintiff engaged in interstate commerce within the meaning of the Motor Carrier Act and, thus, Plaintiff is exempt from the overtime provisions of the FLSA by virtue of the motor carrier exemption. *See Baez*, 938 F.2d at 182 (finding that plaintiff's transportation of checks, coins, mail and currency within the Miami area still qualified as interstate commerce as defined by the motor carrier exemption given that the financial instruments were ultimately bound for banks outside the state of Florida); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962) (holding that although the employees themselves traveled only intrastate, the cargo being transported was destined for a neighboring state and therefore the drivers were exempt from overtime compensation under § 213(b)(1)). Accordingly, it is

ADJUDGED that Defendants' Motion for Summary Judgment **(D.E. No. 31)**, filed on **October 15, 2009** is hereby GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of January, 2010.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record